# In the United States Court of Federal Claims

No. 20-1811C
Filed: June 7, 2021

---

**TWO RIVERS CORPORATE CENTRE, L.P.,**

              *Plaintiff,*

v.

**THE UNITED STATES,**

              *Defendant.*

---

*R. Mark Donnell, Jr.*, Sims Funk PLC, Nashville, Tennessee, for Plaintiff.

*Daniel Hoffman,* Trial Attorney, Commercial Litigation Branch, with whom were *L. Misha Preheim*, Assistant Director, *Martin Hockey, Jr.*, Acting Director, and *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., *Tracy J. Downing*, United States Department of Veterans Affairs, Of Counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

      This controversy illustrates the application of the "mirror image rule," the commonplace canon that differences between the parties' proposed contract terms convert a putative acceptance into a counteroffer. Plaintiff, Two Rivers Corporate Centre, L.P. ("Two Rivers"), claims it is owed a brokerage commission referenced in a written lease proposal presented to the Department of Veterans Affairs ("VA"). Applying the "mirror image" rule, the Court determines that the commission was not incorporated into the resulting contract. Where a response to an offer does not match the terms offered, there is no acceptance and no formation of a contract as to that term. Accordingly, Two Rivers' Complaint fails to identify an obligation of the United States to pay a commission, thus Defendant's Motion to Dismiss must be **GRANTED**.

## I.     Introduction

      At issue here is a lease of a 4,914 square foot office space located in Nashville, Tennessee. (Complaint at 1, ECF No. 1). The lessor, Two Rivers, alleges that the United States owes a brokerage commission of $76,050.23 arising from Box #26 of Section III of the March 2019, proposed Lease Terms and Conditions (the "Lease Proposal"). (*Id*. at 1–2). In said box, entitled "COMMISSIONS (if applicable)," was the handwritten notation "6%" and an adjoining box provided that commission payments would be made "50% at lease award" and "50% at lease

occupancy." (*Id.* at 1; Compl. Ex. A at 40). [1] Notably, Box #26 does not identify the party responsible for the payment of a commission. (Compl. Ex. A at 40). Box #26 also required that a "COMMISSION AGREEMENT" be attached. (*Id.*). No such agreement was included with the Lease Proposal. (Def.'s Mot. to Dismiss at 2, ECF No. 8; *see also* Compl. Ex. A). Additionally, the Lease itself, which was executed two months later in May 2019, included no language regarding the payment of a brokerage commission except incorporation of the Lease Proposal. (Compl. Ex. A at 6). When the Lease was executed, the United States did not pay a commission, resulting in Two Rivers seeking relief from the Contracting Officer ("CO").

Two Rivers filed its claim with the CO on February 25, 2020. (Compl. Ex. B). In that correspondence, Two Rivers acknowledged that (1) no references to the commission appear anywhere in the documentation of the lease with the exception of that in the Lease Proposal, and (2) the Lease Proposal states that Two Rivers is paying a brokerage commission and "expects to be reimbursed." (*Id.*). Two days later, on February 27, 2020, the CO denied Two Rivers' claim. (Compl. Ex. C). In the denial letter, the CO highlighted that the Lease Proposal stated that Two Rivers "was paying a brokerage commission of 6% of the base rent" but "[a]ll language pertaining to Brokerage fees [had been] removed from all RLP documents prior to issuance[.]" (*Id.*). This litigation followed.

On December 9, 2020, Two Rivers filed its Complaint alleging that the VA breached the Lease by failing to reimburse it for the broker's commission paid by Two Rivers in connection with the Lease. (Compl. at 2). Pursuant to RCFC 12(b)(6), the United States now moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. (Mot. to Dismiss at 1). In the United States' view, the Complaint fails to identify any contractual obligation to pay a brokerage commission. (*Id.* at 4). Two Rivers maintains that Box #26 of the Lease Proposal establishes an obligation of the United States to pay a commission to its broker, or alternatively, that Box #26 establishes a contractual ambiguity which should be construed against the United States. (Resp. to Mot. to Dismiss at 3, ECF No. 9).

## II.      Analysis

A motion to dismiss for "failure to state a claim upon which relief can be granted" is appropriate under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In considering a motion to dismiss for failure to state a claim, the Court "must accept as true all the factual allegations in the complaint" and "must indulge all reasonable inferences in favor of the non-movant[.]" *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

For a claim to be properly stated, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl.*

---

[1] Two Rivers' Complaint, Exhibit A is not Bates stamped. Citations to pages within Exhibit A refer to the PDF pagination.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In this instance, the Complaint itself consists of two largely conclusory pages. The factual details relevant to Two Rivers' breach of contract claim are located principally in the exhibits to the Complaint.

"Failure to perform a contractual duty when it is due is a breach of the contract." *Winstar Corp. v. United States*, 64 F.3d 1531, 1545 (Fed. Cir. 1995). To prevail on a breach of contract claim, a plaintiff must generally allege and prove: (1) a valid contract; (2) an obligation or duty arising out of the contract; (3) a breach of the obligation or duty; and (4) damages caused by the breach. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). When contracting with the United States, a plaintiff seeking to enforce the contract must demonstrate mutual intent—including an unambiguous offer and acceptance—show consideration, and establish that the Government's representative possessed the authority to bind the government. *California Federal Bank v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001).

The general rules of contract interpretation apply to contracts to which the government is a party. *Lockheed Martin IR Imaging Sys. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997). Thus, "[w]hen interpreting disputed contractual provisions, the primary objective for the court is to determine the intent of the parties to the contract at the time they contracted." *Padilla v. United States*, 58 Fed. Cl. 585, 591 (2003). In most instances, that intent is gathered from the four corners of the contract. *Mktg. & Mgmt. Info., Inc. v. United States*, 57 Fed. Cl. 665, 674 (2003).

Neither party here disputes the existence of a contract. Indeed, in all respects but one, it appears the parties agree that the Lease agreement was fulfilled. At issue is only whether that contract imposed a duty on the United States to reimburse Two Rivers a brokerage commission. Setting aside the purely conclusory statements of the Complaint, the Court looks to the facts, accepted as true, disclosed by the Complaint's exhibits including the Lease Proposal and the Lease itself.

As recited above, the relevant language of the Lease Proposal is sparse: it references a six-percent commission to be paid in two installments. (Ex. A at 40). The Lease Proposal also required that if a commission was applicable, the parties must attach a "Commission Agreement." (*Id.*). The parties did not do so. The plain language of the Lease Proposal was just that—Two Rivers' offer to lease office space to the VA. There is no ambiguity regarding this document. As the United States correctly points out, nothing in the terms of the Lease obliged the United States to pay the proposed commission. *See C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993) ("A contract is read in accordance with its express terms and the plain meaning thereof.").

Neither party acted further on this portion of the Lease Proposal. The brokerage commission was not ratified by execution of a "Commission Agreement" as Box #26 of the Lease Proposal required, and the parties did not include a commission in the resulting written agreement. It is the Court's responsibility to "give the words of the agreement [of a contract] their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). Similarly,

3

it is not the role of the Court to add additional language to support a conclusion urged by a disappointed party to an otherwise effective contract. *American Cap. Corp. v. F.D.I.C*, 472 F.3d 859, 865 (Fed. Cir. 2006) ("We cannot rewrite a contract or insert words to which a party has never agreed."). The plain language at issue here at best establishes only that Two Rivers sought reimbursement of the commission it was paying. Neither party acted, however, to adopt a provision to that effect into a binding obligation. "The court is bound to give effect to the stipulations of the contract, but not to provisions which the parties deliberately omitted to insert, after attention had been directed to them." *Culliford v. Gomila*, 128 U.S. 135, 158 (1888).

As the Federal Circuit has observed, "[u]nder the traditional 'mirror image' rule of the common law, mismatch between offer and acceptance negates contractual liability." *First Commerce Corp. v. United States*, 335 F.3d 1373, 1381 (Fed. Cir. 2003) (citing *Iselin v. United States*, 271 U.S. 136, 139 (1926)). Here, failure of the parties to execute the required Commission Agreement or otherwise incorporate a provision for payment of a commission in the Lease unequivocally establishes the lack of mutuality regarding this proposed term. *Iselin*, 271 U.S. at 139 ("It is well settled that . . . an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested."). There are no facts within the Complaint or the exhibits which manifest the United States' agreement to reimbursement or payment of a brokerage commission.

As a result of the omission of the Commission Agreement and any terms relating to the commission within the Lease itself, the factual allegations within the Complaint fail to establish an obligation owed by the United States to pay Two Rivers any sum in excess of that expressly agreed. The barebones legal conclusion that the United States failed to pay "[t]he total amount of the commission" to Two Rivers is unsupported by the exhibits to the Complaint. This type of threadbare recital is insufficient to state a claim for relief, and is exactly the type of complaint the Supreme Court sought to address in *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In addition, Two Rivers' claim that the Lease Proposal's reference to a commission creates a contractual ambiguity sufficient to establish a live controversy also fails. The mere fact that parties disagree on the interpretation of the contract does not render its language ambiguous. *Metric Constructors, Inc. v. National Aeronautics & Space Administration*, 169 F.3d 747, 751 (Fed. Cir. 1999) ("To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term."); *Community Heating Plumbing Co., v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993) ("A contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language."). Even where some ambiguity exists, the Court would first resort to extrinsic evidence of the negotiating history of the contract "before resorting to the doctrine of *contra proferentem*" as Two Rivers argues. *See Metro. Area Transit, Inc. v. Nicholson*, 463 F.3d 1256, 1260 (Fed. Cir. 2006). Here, no ambiguity exists and there is no justification for the application of *contra proferentem* nor any need for the Court to resort to evidence outside of the four corners of the contract.

### III.   Conclusion

For the reasons set forth above, the Court **GRANTS** the United States' Motion to Dismiss. Two Rivers' Complaint shall be dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge